IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GREGORY C. LAWRENCE,

    Plaintiff,

    v.                                                 Civil Action No. RDB-16-0112

MARYLAND AVIATION
ADMINISTRATION,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Gregory Lawrence ("Lawrence" or "Plaintiff"), an African-American male, filed this action alleging race discrimination against the Maryland Aviation Administration ("MAA" or "Defendant") in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* and the Maryland Fair Employment Practices Act ("FEPA"), Md. Code, State Gov't §§ 20-266(a), *et seq.*, based on his non-selection for the position of Fire Chief at the Baltimore/Washington International Airport. Currently pending before this Court is Defendant's Motion for Summary Judgment. (ECF No. 41.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Defendant's Motion for Summary Judgment (ECF No. 41) is DENIED and this case will proceed to trial on Plaintiff's race discrimination claim.

## **BACKGROUND**

In 2007, Plaintiff began working as Deputy Fire Chief at Baltimore/Washington International Airport Fire and Rescue Department ("BWI FRD") as a result of a 2003 race

1

discrimination lawsuit he filed against the Maryland Aviation Administration (MAA). (Lawrence Dep., ECF No 41-3, Exh. A at 48, 111.) The record reflects that the settlement agreement of that lawsuit in 2006 resulted in Lawrence's promotion to an Executive Service Position as a Deputy Fire Chief. (ECF No. 1, Exh. 5.) From 2007 through late 2013, he worked as Deputy Fire Chief under Fire Chief Woodrow Cullum. (ECF No 41-3, Exh. A at 115.) In July of 2013, Lawrence had an automobile accident while driving his work-related commute vehicle. (*Id.* at 72.) Subsequently, an Accident Review Board reviewed the incident and conducted a meeting in August of 2013. (*Id.* at 78.) Ultimately the Board assessed Lawrence "10 corrective action points for [his] first preventable accident within the past three years." (*Id.* at Exh. A-13.) One month later in September of 2013, Wayne Pennell, Chief of BWI Operations and Maintenance, requested further investigation into Lawrence's state vehicle. (ECF No. ECF No. 44-5 at 58-60; ECF No. 41-3 at 57.)

In November of 2013, while the investigation was occurring, Fire Chief Cullum retired. (ECF No 44-4 at 49.) Lawrence then became Acting Fire Chief, and Pennell became his direct supervisor.[1] (*Id.*; ECF No. 44-3, Exh. A-1 at 133.) His "Employment Acknowledgement of Acting Capacity Appointment as Fire Chief" indicated that the "anticipated length of acting basis" was through June 1, 2014, and the appointment provided him no special conditions compelling Defendant to ultimately hire him as Fire Chief. (ECF No. 41-3, Exh. 3.) As Chief of Operations, Pennell, who initiated and remained an active part of the investigation into Plaintiff's vehicle use, was also in charge of initiating the

---

[1] Pennell testified that Lawrence was chosen because he was an active Deputy Fire Chief, and that he could not recall whether there were any other currently active Deputy Fire Chiefs at the time. At a maximum, however, he stated that there would have only been one other active Deputy Fire Chief. (ECF No. 41-3, Exh. E at 51-52.)

process for hiring a Fire Chief. (ECF No. 41-3, Exh. E at 26-27; ECF No. 41-3, Exh. A-5.) Because he had used a competitive process to hire other positions in the past, he decided to post an "Executive Service Recruitment" notice for the position. (Exh. E at 26-27; ECF No. 41-3, Exh. A-5.) The notice described the position, and also described two preferred qualifications: (1) a Bachelor of Science in a field closely related to Fire Science Technology or Administration or graduation from the Executive Fire Officer Program; and (2) six years as a senior officer at an airport, municipality, or military fire department. (ECF No. 41-3, Exh. A-5.) The notice also indicated, however, that a standard high school diploma and ten years of work experience as a senior fire officer could be substituted for the preferred qualifications. (*Id.*)

Lawrence applied, and he and nine other individuals were selected to be interviewed. (ECF No. 41-3 at Exh. E-1.) Pennell chose the four individuals to make up the interview panel and sent the list to Diane Walker, the Director of the Office of Human Resources (HR), for approval. (Walker Aff., ECF No. 49-1 at ¶ 2.) Walker approved the four individuals: Benjamin Barksdale, Hope Ripken, Wayne Pennell, and Patrick Sweeney.[2] (*Id.*; Pennell Dep., ECF No. 41-3, Exh. E at 30-31.) The interview questions were also approved by HR and the Office of Fair Practices (OFP). (Ripkin Dep., ECF No. 41-3, Exh. C at 30; Walker Aff., ECF No. 49-1 at ¶ 2.) Each applicant was interviewed in late January of 2014. (ECF No. 41-3, Exh. E-1, E-6.)

Following all of the interviews, the panel created an "Interview Summary Form." (ECF No. 41-3, Exh. E-1, Exh. E-6.) The form shows that from the ten individuals

---

[2] Also assisting with the interview process was Pennell's Assistant Mike Feurer, who also participated in the investigation with respect to Plaintiff's use of his vehicle. (ECF No. 41-3, Exh. E at 42.)

3

interviewed, four applicants were ranked and six applicants were not selected. (*Id.*) Victor Ferreira was ranked the number one candidate. (*Id.*) The form also shows that the four ranked applicants were all "White" and neither of the two African American applicants, including Lawrence, were ranked.[3] (*Id.*) The panel also created a "Selection/Rejection Summary Information Sheet" which listed each selected applicant and detailed reasons for their selection. (*Id.*) Initially, such reasons were not provided for non-selected applicants (*Id.*; Walker Aff., ECF No. 49-1 at ¶ 4.) The panel then sent a selection package, including the Interview Summary Form, each applicant's personal inquiry form, and interview packets, to HR. (Ripkin Dep., ECF No. 41-3, Exh. C at 31.) Diane Walker, Director of the Office of Human Resources, reviewed the packet and agreed with the rankings. (Walker Aff., ECF No. 49-1 at ¶ 3.) Upon reviewing Ferreira's inquiry form and noting that he had selected the box for "Hispanic/Latino" origin, she also advised the interview panel to insert his origin on the Interview Summary Form. (*Id.* at ¶ 5.)

Walker then sent the package to Angela Martin, the Director of the Office of Fair Practices, for her review. (*Id.* at ¶ 4; ECF No. 41-3, Exh. E at 30 at 137.) Martin, African-American, reviewed the selection package and initially requested additional information, including narrative information and explanations for the six individuals who were not selected. (Martin Aff., ECF No. 49-2 at ¶ 4.) Once the packet was resubmitted, she reviewed the information for all ten individuals. (*Id.* at ¶ 5.) Upon review, she recommended that one of the unranked applicants, an African-American male, be ranked number five because of his

---

[3] As later described, Victor Ferreira, the number one ranked applicant, is Hispanic/Latino. However, the initial Interview Summary Form labels him as White. ECF No. 41-3, Exh. E-1. It was subsequently changed at the advisement of the Director of the Office of Human Resources due to his inquiry form indicating that he was of Hispanic/Latino origin.

experience and because his responses were comparable to those of the individual ranked number four. (*Id.* at ¶ 6.) Martin approved keeping Lawrence unranked. (*Id.* at ¶ 6; ECF No. 49-1 at ¶ 5.) Because HR needed to approve the final decision, the interview package went back to Walker for final approval. (ECF No. 49-1 at ¶ 6.) On February 28, 2014, Ferreira was approved for the position of Fire Chief. (*Id.*)

Within one week, specifically on March 5, 2014, the Plaintiff Lawrence was terminated as Deputy Fire Chief as a result of the investigation that Pennell ordered and oversaw into Lawrence's vehicle activity. (ECF No. 41-3, Exh. A-15.) On March 12, 2014, he appealed his termination to the Office of Administrative Hearings (OAH), contending his termination was racially motivated in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* and the Maryland Fair Employment Practices Act ("FEPA"), Md. Code, State Gov't §§ 20-266(a). (Decision of Admin. Law Judge, ECF No. 44-2.) Specifically, he asserted that the audit and investigation of the personal use of his vehicle, as ordered by Pennell, were pretext to justify his termination and the real reason for his termination was racial bias and retaliation for his previous discrimination suit. (*Id.*) The Administrative Law Judge (ALJ) held a five-day hearing and made various findings of facts. (*Id.*) Ultimately the ALJ concluded that Lawrence was terminated due to racial discrimination, and therefore his termination was illegal. (*Id.*) Accordingly, on October 31, 2014, the ALJ ordered that the MAA's decision to terminate Lawrence be reversed and that he be reinstated. (*Id.*) The MAA subsequently appealed to the Circuit Court for Anne Arundel County. (ECF No. 44-3.) The Circuit Court found that there was substantial evidence to support the ALJ's factual and inferential conclusions. (*Id.*) Briefly summarizing

5

the ALJ's conclusions, the court wrote:

> The fact-finding of the ALJ left no doubt whatsoever of a pervasive culture of discrimination from the rank and file to the highest level of management in the MAA Fire and Rescue Department. Plainly put, certain management personnel were in effect lying in wait for the retirement of the long-time chief of the FRD who was perceived as protective of [Lawrence], and upon that retirement immediately set in motion a blatant scheme to discredit and terminate an African-American Deputy Chief.

(*Id.*)

On January 11, 2016, Lawrence initiated the instant action premised on the MAA's alleged race discrimination and retaliation in selecting the new BWI FRD Fire Chief. (ECF No. 1.) Defendant filed a Motion to Dismiss both claims, which this Court granted in part and denied in part. *Lawrence v. Maryland Aviation Administration*, No. RDB-16-112, 2016 WL 5870028 (D. Md. Oct. 7, 2016); ECF Nos. 28, 29. Specifically, this Court denied Defendant's Motion to Dismiss as to Plaintiff's race discrimination claim, without prejudice to re-file. However, this Court granted Defendant's Motion to Dismiss the retaliation claim. Discovery ensued, and Defendant filed the currently pending Motion for Summary Judgment as to Plaintiff's race discrimination claim. (ECF No. 41.)

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if [a] movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the

6

evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Accordingly, when considering a motion for summary judgment, a court's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249; *see also Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (explaining that a court must abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial).

While the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), a court must consider the facts and all reasonable inferences in the light most favorable to the non-moving party. *Judd*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Rather, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, --- U.S. ----, 134 S. Ct. 1861, 1866-68 (2014) (per curiam).

## ANALYSIS

Defendant Maryland Aviation Administration ("MAA") argues that it is entitled to summary judgment on Plaintiff Lawrence's race discrimination claim because the undisputed facts show that Lawrence's non-selection as Fire Chief was not racially motivated. Rather,

7

Lawrence was not the most qualified applicant for the position. In opposition, Lawrence first argues that collateral estoppel applies from the administrative proceeding related to his termination. Second, he argues that there are genuine issues of material fact concerning whether MAA discriminated against him on the basis of his race. This Court begins by analyzing Plaintiff's collateral estoppel argument before turning to the merits of his claim.

## I. Collateral Estoppel

"'Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'" *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (quoting *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970 (1979)). Further, "findings of fact made during administrative adjudications are to be accorded the same collateral estoppel effect they would receive if made by a court." *Id.* (citing *Jones v. SEC*, 115 F.3d 1173, 1178 (4th Cir. 1997)). A party seeking to invoke collateral estoppel must establish five elements: "(1) that 'the issue sought to be precluded is identical to one previously litigated' (element one); (2) that the issue was actually determined in the prior proceeding (element two); (3) that the issue's determination was 'a critical and necessary part of the decision in the prior proceeding' (element three); (4) that the prior judgment is final and valid (element four); and (5) that the party against whom collateral estoppel is asserted 'had a full and fair opportunity to litigate the issue in the previous forum' (element five)." *Id.* (quoting *Sedlack v. Braswell Servs. Group Inc.*, 134 F.3d 219, 224 (4th Cir. 1998)).

Plaintiff's Opposition asserts both that "the principal of collateral estoppel prevents

defendant from arguing that plaintiff was not unlawfully terminated for racially discriminatory reasons" *and* that "Defendant would be collaterally estopped from making the argument that there was no racial discrimination [in this case] against Mr. Lawrence." (ECF No. 44 at 4.) Beginning with Plaintiff's first assertion, his current claim is for discriminatory *failure to promote*, and Defendant has not attempted to argue that Lawrence was not discriminated against when he was *terminated*. As to Plaintiff's second assertion, collateral estoppel does not preclude Defendant from arguing that Lawrence's non-promotion was not discriminatory. The first element of collateral estoppel requires that "the issue sought to be precluded is identical to one previously litigated." *Collins*, 468 F.3d at 217. Plaintiff himself states that "[t]he issue of whether Mr. Lawrence was a victim of racial discrimination in his *termination* was fully tried during the five-day administrative hearing." (ECF No. 44 at 6) (emphasis added); *see also* ECF No. 44-2 at 21, 26 ("[T]he ultimate issue in this case is whether Management impermissibly fired [Lawrence] because of his race."). The ALJ, in reaching its conclusion, extensively considered the company's policy on personal use of vehicles, the circumstances surrounding the audit and investigation into Plaintiff's vehicle, and the subsequent errors in the audit's findings, ultimately determining that:

> The combination of a racially inhospitable environment at BWI FRD and the ongoing failure of Management to support the Employee's integration into that environment, with a clearly unfair and pre-textual basis for termination, *and with no other articulated basis for termination*, all lead me to conclude that it was more likely than not that the only reason for termination of the Employee was his race.

(ECF No. 44-2 at 53) (emphasis added). The ALJ's finding that Lawrence's termination was discriminatory does not necessitate the conclusion that his non-promotion was also discriminatory. The issue litigated in the administrative proceeding was whether the reason

9

for Lawrence's *termination*—the investigation into his vehicle—was merely pretext for discrimination. As explained below, the issue in this case is whether the reason for Lawrence's *non-promotion*—that another candidate was more qualified for the position—was merely pretext for discrimination. The issue previously litigated in the administrative proceeding is therefore not identical to the issue in this case, and the administrative proceeding does not collaterally estop Defendant from arguing that Plaintiff's non-promotion was not discriminatory.

## II.     Race Discrimination Claim

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.* makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals race . . . .."[4] § 2000e-2(a)(1). A plaintiff may establish a claim based on race discrimination by two methods of proof: the "pretext" framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973), or the "mixed-motive" framework established under *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775 (1989). *Vicino v. Maryland*, 982 F.Supp.2d 601, 609 (D. Md. 2013); *Worden v. SunTrust Banks, Inc.*, 549 F.3d 334 (4th Cir. 2008). At the outset, this Court notes that "notwithstanding the intricacies of proof schemes, the core of every Title VII case remains . . .  'whether the plaintiff was the victim of intentional discrimination.'" *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 302 (4th Cir. 2010) (Davis, J., concurring) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153, 120

---

[4] Claims under Maryland's Fair Employment Practices Act, Md. Code, State Gov't §§ 20-601, *et seq.*, are interpreted consistently with Title VII and therefore analyzed herein as one. *Williams v. Silver Spring Volunteer Fire Dept.*, 86 F.Supp.3d 398, 419 (D. Md. 2015) (citing *Chappell v. S. Md. Hosp.*, 320 Md. 483, 578 A.2d 766 (1990)).

S.Ct. 2097 (2000)).

Under the "pretext" framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973), the burden is first on the plaintiff to make a *prima facie* case of discrimination. In order to make a *prima facie* claim for failure to promote, a plaintiff must show that (1) he or she is a member of a protected class, (2) he or she applied for the position, (3) he or she was qualified for that position, and (4) he or she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 319 n. 6 (4th Cir. 2005). In this case, the first three prongs are not in dispute. Lawrence, an African-American male, is a member of a protected class and applied for the position of Fire Chief. Defendant also does not dispute that he was qualified for the position. (ECF No. 41-1 at 11.) Indeed, Lawrence began serving as Acting Fire Chief in November of 2013, almost three months prior to his interview for the position. Defendant argues, however, that Lawrence has not produced any evidence that the circumstances of his non-promotion give rise to an inference of unlawful discrimination. (*Id.*)

The United States Court of Appeals for the Fourth Circuit has explained that an inference of unlawful discrimination arises when an employer fills the position at issue with an applicant outside of the plaintiff's protected class. *Carter v. Ball,* 33 F.3d 450, 458 (4th Cir. 1994) ("To satisfy the fourth prong [of an inference of unlawful discrimination, plaintiff] need only show that the position was filled by a white applicant, as he has done." (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186-87, 109 S.Ct. 2363, 2378 (1989)); s*ee also Isaac v. Housing Authority of Baltimore City*, No. GLR-16-327, 2016 WL 5146416, at *4 (D. Md.

Sept. 21, 2016) ("There is an inference of unlawful discrimination when an employer fills a position with an applicant outside the plaintiff's protected class . . .."); *Howerton v. Bd. of Educ. of Prince George's Cty.*, No. TDC-14-0242, 2015 WL 4994536, at *9 (D. Md. Aug. 19, 2015) ("As both positions were filled with African American employees, Howerton has shown that he was rejected under circumstances giving rise to an inference of unlawful discrimination."). Plaintiff, an African-American male, brings his failure to promote claim based on a position that was filled with an individual of Hispanic/Latino origin, and therefore outside of his protected class. Accordingly, he has met this prong of the *prima facie* case for failure to promote, and this Court now turns to whether Defendant has offered a legitimate, non-discriminatory reason for Plaintiff's non-promotion.

The second step of the *McDonnell Douglas* framework places the burden on the employer to assert a "legitimate, nondiscriminatory reason" for the disparate treatment. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. When evaluating this step in the analysis, "this Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." *DeJarnette v. Corning, Inc.,* 133 F.3d 293, 298–299 (4th Cir. 1998); *Staley v. Guenberg*, No. 13-1875, 575 Fed. App'x. 153, 156 (4th Cir. June 6, 2014). "Thus, when an employer articulates a reason for [its treatment of the plaintiff] not forbidden by law, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [employment decision]." *DeJarnette*, 133 F.3d at 299; *Fields v. Verizon Services Corp.*, No. 11-2093, 493 Fed. App'x. 371, 378-79 (4th Cir. Aug. 9, 2012).

Defendant asserts that the panel chose Ferreira over Lawrence because Ferreira was

better qualified for the position. The interview panel noted that Ferreria holds a Bachelor of Science degree in Fire Science, "articulated extensive experience in the field of Fire Fighting," "highlighted his leadership in re-instituting the accreditation status for the Fire Training Academy," had experience with certain codes, and "possessed experience dealing with labor unions and politics." (ECF No. 41-1 at 12.) In contrast, Defendant asserts that Lawrence was less qualified because he held a high school diploma, had limited code compliance experience, "did not describe any challenging and complex management issues or outcomes," and did not "offer a strategy to fulfill diversification in workforce." (*Id.*) Plaintiff does not dispute that together this makes a legitimate, non-discriminatory reason for failing to promote him. ECF No. 44 at 13 ("While Defendant has articulated a legitimate reason which dissolves the presumption of the *prima facie* case . . ..."). Accordingly, Defendant has met this prong of the *McDonnell Douglas* test.

The final step in the *McDonnell Douglas* framework shifts the burden back to Plaintiff to demonstrate that MAA's purported reason for not promoting him was "pretextual." *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817. "A plaintiff alleging a failure to promote can prove pretext by showing that [he] was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Heiko v. Colombo Savings Bank, F.S.B.,* 434 F.3d 249, 259 (4th Cir. 2006); *Christian v. South Carolina Dept. of Labor Licensing and Regulation*, No. 14-2168, 651 Fed. App'x. 158, 165 (4th Cir. June 1, 2016). A plaintiff must show "both that the reason was false, and that discrimination was the real reason" for the disparate treatment. *Adams v. Tr. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (emphasis omitted). Plaintiff asserts

13

both that "pretext is not just based on the fact that a jury could easily find that Mr. Lawrence was more qualified than Mr. Ferreira, but is also based on the fact that Defendant has a known and legally proven racial animus towards Mr. Lawrence." (ECF No. 44 at 15.)

This Court begins by comparing Ferreira and Lawrence's qualifications for Fire Chief. Lawrence's experience at BWI FRD consisted of serving as Deputy Fire Chief for seven years. During this time, he worked under Fire Chief Cullum, whereby he assumed the duties and responsibilities of Chief as necessary or required from 2007 through Cullum's retirement in November of 2013. When Cullum retired, Lawrence took over as Acting Fire Chief. He stayed Acting Fire Chief throughout the interview process until his termination. As for general experience, the panel noted that he "articulated 33 years of diverse experience in the field of firefighting which including holding various positions in the industry at DOD and civilian airports including Fire Chief at two public airports." Accordingly, Lawrence met the qualifications that the "Executive Service Recruitment" notice stated could substitute for the preferred qualification of a Bachelor of Science degree. (ECF No. 41-3, Exh. A-5.) On the other hand, Ferreira was a non-BWI FRD employee who has a Bachelor of Science and "30 years of diverse experience in the field of firefighting which included holding various positions in the industry including Assistant Fire Chief at a large municipal Fire Department."

Turning to whether the record contains circumstantial evidence that undermines the credibility of MAA's reasons for promoting Ferreira over Lawrence, Plaintiff asserts that "a reasonable fact-finder could certainly infer that it was ongoing racial animus against Mr. Lawrence that drove the Defendant's actions in filling the Fire Chief position. This is

14

especially likely considering the individual (Wayne Pennell) who was responsible for the racially discriminatory termination of Mr. Lawrence was also the individual who organized and lead the hiring panel that denied Mr. Lawrence the Fire Chief position." (ECF No. 44 at 15.) In response, Defendant asserts that Plaintiff was terminated *after* Ferreira was chosen as Fire Chief, and that the involvement of the panel, HR, and the OFP negates Plaintiff's argument that Pennell's involvement tainted the process.

Although Lawrence had not yet been terminated at the time of his non-promotion, Pennell called for the investigation into Plaintiff's vehicle back in September of 2013. This investigation was then "going on for some time" when the panel interviewed Lawrence for the Fire Chief Position, (Pennell Dep., ECF No. 44-5 at 92), and Lawrence was terminated less than a week after Ferreira was chosen for the position. Examining the process of choosing Fire Chief itself, Pennell initiated the process for selecting the new Fire Chief. (*Id.* at 32.) He decided to make the process competitive and chose the panel of interviewers and interview questions. (*Id.* at 79-80.) Defendant relies heavily on that it was a four person panel who ranked the applicants and the rankings for the position were approved by HR and the OFP. However, the facts remain that (1) only one of the four individuals on the panel were African-American; (2) of the ten individuals chosen to be interviewed, only two were African-American; (3) neither of the two African-American applicants were initially selected by the panel; (4) the panel did not initially provide any reasons for why the non-selected individuals were not ranked; and (5) at the time the panel made their decisions, all four ranked applicants, including Ferreira, were labeled as "White."

There are also genuine issues of material fact precluding summary judgment on

15

Plaintiff's race discrimination claim under the mixed-motive theory. Under the "mixed-motive" framework initially articulated in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775 (1989) and subsequently provided for by Congress in 42 U.S.C. § 2000e-2(m), "a plaintiff succeeds on a mixed-motive claim if she 'demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 317 (4th Cir. 2005) (quoting 42 U.S.C. § 2000e-2(m)). Accordingly, under this theory it is sufficient for a plaintiff to demonstrate that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons. *Id.* MAA claims that the panel chose Ferreira over Lawrence because Ferreira's qualifications were superior. However, given Ferreira *and* Lawrence's qualifications, the above described racial disparity at several stages of the Fire Chief hiring process, and the circumstances surrounding Lawrence's initial hiring as Deputy Fire Chief and subsequent termination, there are genuine issues of material fact concerning whether his race was at least *a* motivating factor in Lawrence's non-promotion. *See Westmoreland v. Prince George's County, Md.*, 876 F.Supp.2d 594, 611 (D. Md. 2012) ("Indeed, creating a triable issue on the question of unlawful discrimination under the *McDonnell Douglas* framework would seem, ipso facto, to create a triable issue on the same under the mixed-motive framework.").

Viewing the evidence in the light most favorable to Plaintiff Lawrence, the circumstances surrounding his initial arrival at BWI FRD, his reinstatement after his termination, the qualifications of Ferreira and Lawrence, and the manner in which MAA chose the candidate for Fire Chief, are sufficient to raise genuine issues of material fact for

16

Plaintiff's race discrimination claim under either the *McDonnell Douglas* or mixed-motive frameworks. Accordingly, Defendant's Motion for Summary Judgment is DENIED and this case will proceed to trial on Plaintiff's race discrimination claim.

## CONCLUSION

For the above stated reasons, Defendant's Motion for Summary Judgment. (ECF No. 41) is DENIED and this case will proceed to trial on Plaintiff's race discrimination claim.

A separate Order follows.

Dated: January 19, 2018         \_\_\_\_\_/s/_____
                                Richard D. Bennett
                                United States District Judge